IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JENNIE CORA JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 22-0409-MU |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennie Cora Johnson brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 5 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 6. Upon consideration of the administrative record, Johnson's brief, the Commissioner's brief, and oral argument presented at the May 3, 2023, hearing before

the undersigned Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

Johnson applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, and for SSI, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on March 5, 2020, alleging disability beginning on February 20, 2019. (PageID. 345-56). Her application was denied at the initial level of administrative review on July 21, 2020, and upon reconsideration on September 4, 2020. (PageID. 215-20; 229-33). On September 20, 2020, Johnson requested a hearing by an Administrative Law Judge (ALJ). (PageID. 249-50). Johnson appeared at hearings before the ALJ on April 27, 2021, and January 12, 2022. (PageID. 96-120; 75-95). On February 25, 2022, the ALJ issued an unfavorable decision finding that Johnson was not under a disability during the applicable time period. (PageID. 57-69). Johnson appealed the ALJ's decision to the Appeals Council, and, on August 19, 2022, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (PageID. 43-47).

After exhausting her administrative remedies, Johnson sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on January 18, 2023. (Docs. 11, 12). Both parties filed

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 5. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

2

briefs setting forth their respective positions. (Docs. 14, 15). Oral argument was held before the undersigned Magistrate Judge on May 3, 2023. (Doc. 19).

## II.  CLAIM ON APPEAL

Johnson makes the following claim on appeal:

1)  The ALJ's RFC determination was not supported by substantial evidence. (Doc. 14 at p. 2; PageID. 640).

## III. BACKGROUND FACTS

Johnson, who was born on June 13, 1969, was almost 51 years old at the time she filed her claim for benefits. (PageID. 35-36; 345-47). Johnson initially alleged disability due to depression, anxiety, diabetes, and restless leg syndrome. (PageID. 399). The date she was last insured was September 30, 2020. (PageID. 58). At the hearings before the ALJ, she reaffirmed that her inability to work is due to depression, anxiety, diabetes, and the effects of restless leg syndrome, primarily fatigue and drowsiness. (PageID. 80-82; 102-111). Johnson testified that she graduated with a "Bachelor of Education" in the Philippines, her native country, but has had no additional education, degrees, trade school, or certifications. (PageID. 100). In the fifteen years prior to filing her claim, she worked as a game attendant at a casino, a stock clerk and cashier at Wal-Mart and Dollar General, and as an assistant manager at Dollar General. (PageID. 101-02). She left her employment at the casino, her last job, when she and her husband separated and she has not worked since because of her depression and anxiety, as well as her other medical conditions. (PageID. 102-04).

She reported that, during the day, she stays home, manages minimal personal care due to pain and numbness, can make microwave meals or heat things up in the

3

oven, but does not cook meals, and cannot do household chores or yardwork. (PageID. 410-13). She has a driver's license but does not drive due to extreme anxiety and fear of an accident. (PageID. 413). She spends time reading. (PageID. 414). She stated that her ability to pay attention varies from day to day, that she does not finish what she starts, that she does not follow written instructions very well, that she does the best she can with spoken instructions, she respects authority figures, and she cannot handle stress or changes in routine. (PageID. 415-16).

## IV. ALJ'S DECISION

After conducting two hearings, the ALJ determined that Johnson was not under a disability at any time from February 20, 2019, the alleged onset date, through the date of the decision, February 25, 2022, and thus, was not entitled to benefits. (PageID. 69). In her decision, the ALJ first determined that Johnson's DLI was September 30, 2020. (PageID. 59). She next began the process of applying the five-step sequential evaluation to Johnson's claim. At step one, the ALJ found that Johnson had not engaged in SGA during the period since her alleged onset date (February 20, 2019). (*Id.*). Therefore, she proceeded to an evaluation of steps two and three. The ALJ found that Johnson had the following severe impairments: depression, generalized anxiety disorder, restless leg syndrome, asthma, morbid obesity, insomnia, obstructive sleep apnea, and diabetes, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 59-62). After considering the entire record, the ALJ concluded that Johnson has the residual functional capacity ("RFC") to perform a range of light work, except that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, can stand and/or

walk six hours and sit two hours per workday with customary breaks, cannot operate leg or foot controls, cannot climb ladders, ropes, or scaffolds, can climb ramps and stairs occasionally, can never crawl, can occasionally kneel, can frequently balance, stoop, and/or crouch, cannot tolerate concentrated exposure to extreme temperatures, cannot work at unprotected heights or operate hazardous moving equipment, cannot drive, cannot interact with the public, cannot coordinate with coworkers to perform team tasks (meaning both workers would have their hands on the same project at the same time), is limited to simple tasks with reasoning, language and math levels no higher than 2, and could only occasionally tolerate changes in the work tasks or setting. (PageID. 62-67). After setting forth her RFC, the ALJ determined that Johnson was unable to perform any past relevant work. (PageID. 67-68). The ALJ, however, found that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Johnson can perform. (PageID. 68-69). Accordingly, the ALJ found that Johnson was not disabled within the meaning of the Act from February 20, 2019, through the date of the decision, which was February 25, 2022. (PageID. 69).

## V. STANDARD OF REVIEW

Eligibility for both DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E); 1382(a)(1)-(2). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

5

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. DISCUSSION

As noted above, Johnson claims that the ALJ's RFC determination was not supported by substantial evidence. A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are

7

demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3.

It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

Johnson specifically claims that the ALJ erred in finding that she could perform tasks with reasoning and math skills no higher than a level 2 in her assigned RFC. (Doc. 14 at pp. 3-4; PageID. 641-42). Pursuant to the *Dictionary of Occupational Titles*, herein referred to as "DOT," reasoning development level 2 is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral

instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Dictionary of Occupational Titles,* Appendix C – Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016). Likewise, mathematical development level 2 is defined as the ability to "[a]dd, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units." *Id.* Plaintiff avers that the evidence shows that she is not able to perform mathematical skills at this level, and she argues the ALJ's conclusion in the RFC that she can work at a job that requires reasoning and mathematical development up to level 2 is not supported by substantial evidence.

      The ALJ called upon a vocational expert to determine whether jobs exist in the national economy for an individual with Johnson's age, education, work experience, and RFC. As set forth in the ALJ's decision, the vocational expert identified three jobs that met these parameters: wood bench assembler/assembler of small products (DOT code 706.684-022 and 1,353,400 jobs nationally), packing/sorting jobs such as cotton roll packer (DOT code 920.685-054 and 419,100 jobs nationally), and final inspector (DOT code 727.687-054 and 131,500 jobs nationally). (PageID. 68-69, 91). Pursuant to the DOT, while the job of Final Inspector requires a reasoning, math, and language level of 2, DICOT 727.687-054, 1991 WL 679672 (Jan. 1, 2016), the job of assembler of small products requires a reasoning and language level of 2 and a math level of 1, DICOT 706.684-022, 1991 WL 679050 (Jan. 1, 2016), and the job of cotton roll packer requires a reasoning level of 2 and language and math level of 1. DICOT 920.685-054, 1991 WL 687936 (Jan. 1, 2016). A math level of 1 is defined as the ability to: "[a]dd and subtract

9

two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." *Id.*

### A. Math Skills

Regarding Johnson's math abilities, the record shows that she graduated from college with a "Bachelor of Education" in the Philippines, her native country, and has worked during the fifteen years preceding her claim as a game attendant at a casino, a stock clerk and cashier at Wal-Mart and Dollar General, and as an assistant manager at Dollar General. (PageID. 100-02). Pursuant to the Dictionary of Occupational Titles, game attendant (DOT code 342.657-014) requires a reasoning, math, and language level of 3, cashier (DOT code 211.462-010) requires a reasoning level of 3 and a math and language level of 2, and assistant manager (DOT code 189.167-018) requires a reasoning level of 5, a math level of 3, and a language level of 4. In her Function Report, she stated that she can count change. (PageID. 413). As pointed out by Johnson, her examinations by Dr. Carney and Dr. Bennett found that her presented math skills were limited. Dr. Carney's report stated that she "could do simple math problems like 12 – 5, she could not do simple math problems like 8 x 3, 25 – 14, and 4 x 9." (PageID. 563). However, Dr. Carney also noted that she "does appear capable of managing funds" and further noted that "[r]egarding the examination process, Jenniecora appears to *not* be a relatively cooperative and reliable informant [and] appeared to be overstating her difficulties." (PageID. 564-65). Dr. Bennett's notes reflected that Johnson "had difficulty with serial sevens from 100, [but] she could do serial threes from 20." (PageID. 574). He further noted that she could do simple

calculations, including multiplication, but seemed to have no useful math skills beyond that point." (*Id.*). In his opinion, she did not appear capable of managing her own financial benefits. (PageID. 576).

Because she has a degree in education and has worked in past jobs that require mathematical skills above a 2, the Court finds that, although a close call, there is substantial evidence in the record that supports a finding that Johnson could perform jobs with a mathematical development level up to 2. *See Thomas v. Comm's of Soc. Sec.*, 497 F. App'x 916, 920 n.2 (11th Cir. 2012) (noting that the Court can consider previous jobs in determining the plaintiff's skill level). Assuming arguendo that Johnson could prevail on her argument that there is not substantial evidence to support a finding that she has the ability to work at mathematical level 2, she would still not prevail. Such error by the ALJ would be harmless here. The record clearly supports a finding that she could perform jobs with a mathematical development level of 1. Two of the jobs identified by the vocational expert require a math level of 1 and those jobs exist in significant numbers in the national economy - 1,353,400 jobs nationally and 419,100 jobs nationally, respectively.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and considered the arguments made by Johnson, the Court finds that, even though there may be some contrary evidence concerning her

11

mathematical abilities, the Commissioner's determination is due to be affirmed on this issue. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## B. Reasoning Skills

Johnson also argues that the ALJ's determination that she could perform jobs with a reasoning level up to 2 is inconsistent with limiting Johnson to simple tasks because level 2 requires a person to be able to perform detailed but uninvolved written or oral instructions. (Doc. 14 at p. 5; PageID. 643). Johnson cannot prevail on this argument as a matter of law. The Eleventh Circuit recently held in *Matos v. Commissioner of Social Security,* No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022), that "[t]here is no apparent conflict between a limitation to simple, routine, repetitive tasks and a requirement to carry out detailed but uninvolved instructions." Likewise, in *Buckwalter v. Acting Commissioner of Social Security,* 5 F.4th 1315, 1323-24 (11th Cir. 2021), the Court found no conflict between an RFC that limits the claimant to jobs involving the ability to "understand, carry out, and remember simple instructions" and to "make simple work-related decisions" and the ALJ's reliance on testimony that identified positions for the plaintiff with a reasoning level of two. Based upon these authorities, this Court concludes that a limitation to jobs requiring a reasoning level up to 2 is consistent with a limitation to simple tasks; therefore, there being no inconsistency in the ALJ's RFC determination, Johnson cannot prevail on this argument.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of

Social Security denying Plaintiff Jennie Cora Johnson benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **25th** day of **May, 2023**.

                                                s/P. BRADLEY MURRAY
                                                **UNITED STATES MAGISTRATE JUDGE**